**Hal E. TOTZ, Appellant,**

v.

**Louis W. SULLIVAN, Secretary of United States Department of Health and Human Services, Appellee.**

No. 91–1658.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1991.

Decided April 8, 1992.

---

Ralonda Jackson Mason, St. Cloud, Minn., argued (Ann Cofell, on the brief), for appellant.

Gary Sultz, HHS Regional Counsel, Chicago, Ill., argued (Robert Small, Asst. U.S. Atty., of Minnesota, Donna Weinstein and Richard Urbin, HHS Counsel, on the brief), for appellee.

Before LAY,\* Chief Judge, ARNOLD,\*\* Circuit Judge, and STUART,\*\*\* Senior District Judge.

LAY, Chief Judge.

Hal Totz appeals from the district court's order affirming the Secretary of Health and Human Services' denial of Totz's application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383c (1988). We reverse and remand for further proceedings before the Secretary.

BACKGROUND

At the time of the evidentiary hearing in February of 1989, Totz was thirty-nine years old and had an eighth grade education.[1] He was then living with his father and brother. His daily activities included watching television, reading, bird-watching and performing light chores around the house. Totz worked as a laborer in a poul-

---

\* The HONORABLE DONALD P. LAY was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

\*\* The HONORABLE RICHARD S. ARNOLD became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

\*\*\* The HONORABLE WILLIAM C. STUART, United States Senior District Judge for the Southern District of Iowa, sitting by designation.

1. Though he has taken at least one class in an effort to earn a general education diploma, Totz has limited mathematical ability. At the hearing Totz testified to having difficulties with change and could not correctly multiply four times six.

try processing plant (Armour Foods) continuously from 1967 until he was laid off in April of 1983. He claims a disability onset date of May 28, 1983, arising from a combination of physical and mental impairments including cerebral palsy,[2] lower back pain,[3] heart palpitations[4] and low intelligence. Totz's primary impairment is the cerebral palsy which hinders his locomotion. He suffers stiffness in both legs and walks with a scissored gait. He is unable to walk on ramps or uneven surfaces, loses his balance easily, and is limited in his ability to walk distances. Totz is also limited in his ability to stand, sit, lift, balance, bend, squat, crawl, climb, and reach overhead, all as a result of cerebral palsy and back pain. At the evidentiary hearing, Totz testified that he experiences back pain every day which increases with exertion, lifting, walking (distances), or standing for more than fifteen minutes, and that he is unable to sit continually for more than one hour at a time.

The Administrative Law Judge (ALJ) followed the five-step analysis mandated by 20 C.F.R. § 404.1520 (1990), finding in part that the claimant has "severe" impairments but does not have an impairment or combination of impairments qualifying under the "listed impairments." The ALJ also found that Totz was unable to perform his past work but could perform entry-level seden-

tary work. This last finding was held to be dispositive on the issue of disability. It was supported by the testimony of Karen Ihli, a vocational expert, who, in response to a hypothetical put forth by the ALJ,[5] opined that there were jobs available in the Minnesota economy for an individual with Totz's limitations.[6] On appeal, Totz contends the district court erred in affirming the ALJ's decision to deny benefits since the hypothetical put forth to the vocational expert was not accurate. Totz also urges that the ALJ failed to examine the combined effect of his various conditions; failed to take account of his subjective complaints of pain; and failed to fully develop the record.

## DISCUSSION

Initially we find no merit to the contention that the ALJ considered Totz's impairments only in isolation, and not the combined effects of all of Totz's impairments. *See* 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(F) (1988). In holding that Totz did not have a "listed impairment," *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (1990), the ALJ specifically found that even "when all of the medical findings are combined" they fail to meet the qualifications for a listed impairment. Also, in determining Totz's residual functional capacity,[7] the ALJ incorporated restrictions regarding each of Totz's limitations. The hypothetical included (1) Totz's

---

2. Cerebral palsy is a descriptive term applied to a number of non-progressive motor disorders resulting from gestational or perinatal central nervous system damage and characterized by an impairment of voluntary movement. *The Merck Manual of Diagnosis and Therapy* 2110 (R. Berkow ed., 15th ed. 1987).

3. Totz sustained injuries to his lower back in an automobile accident which occurred in May of 1983.

4. Heart palpitations are subjective sensations of an unduly rapid or irregular heart beat. *Dorlund's Illustrated Medical Dictionary* 1215 (Elizabeth J. Taylor et al. eds., 27th ed. 1988). At the time of the hearing, Totz was taking 80 mg. of Corgard daily to control this condition.

5. The ALJ's hypothetical described a thirty-nine-year-old man with a limited education and work experience as a laborer in a packing house, impaired by cerebral palsy, leg and lower back pain, with intermittent heart palpitations, and

borderline intellectual ability. The ALJ then imposed the following restrictions on the hypothetical man: cannot lift or carry more than 20 pounds; can walk and stand two hours per eight-hour work day; can sit six hours per eight-hour work day provided he has the opportunity to change positions every 15–20 minutes; is limited in his ability to pull and climb, balance, stoop, crouch, kneel and crawl; cannot walk on uneven ground surfaces or at heights; cannot interchange with large crowds or the general public; and should be limited to simple one and two step operations.

6. Ihli testified that a person with such limitations could perform work as an optical goods assembler (2000 positions in Minnesota), a wire worker or coil inspector (3500 positions), or a hand packager (1800 jobs).

7. Residual functional capacity is a measure of what a claimant can do despite his or her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (1990).

mental limitations (limited to simple, routine, one and two step instructions); (2) Totz's lower back problems (no prolonged sitting or standing; no reaching, bending, squatting, etc.); (3) Totz's heart condition (no strenuous physical activities such as lifting more than twenty pounds or walking long distances); and (4) Totz's cerebral palsy (cannot walk on uneven ground or work at unprotected heights). Thus, we believe the ALJ fairly considered the combined effects of Totz's limitations.

■ Secondly, we find there exists substantial evidence on the record as a whole indicating that the ALJ correctly factored in Totz's subjective complaints of pain in determining that Totz's pain was not disabling. The ALJ specifically noted that Totz experienced pain, but concluded the pain was not disabling since (1) Totz took no pain medication; (2) Totz's medical treatment was minimal; and (3) Totz was able to perform a variety of daily activities inconsistent with disabling pain. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.) (putting forth the factors on which to focus in determining the credibility of a claimant's assertion of disabling pain), *supplemented*, 751 F.2d 943 (8th Cir.1984), *vacated*, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986), *adhered to on remand*, 804 F.2d 456 (8th Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987). Thus, the ALJ properly examined the correct factors and reasonably concluded that Totz's pain was not disabling.[8]

■ However, we do find a problem in the factual detail the ALJ used in developing the hypothetical question for the vocational expert. It is well settled that the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments. *Shelltrack v. Sullivan*, 938 F.2d 894, 898 (8th Cir.1991). Testimony elicited by hypothetical questions that do not relate all of a claimant's impairments cannot constitute substantial evidence to support a finding of no disability. *Id.; see also Penn v. Sullivan*, 896 F.2d 313, 316–17 (8th Cir.1990).

■ As part of the hypothetical in the instant case, the ALJ described a man who could sit six hours of an eight-hour work day. This description is not supported by substantial evidence upon the record as a whole. Totz did not testify regarding the total hours he could sit in one eight-hour day; he only stated that "if I sit too long like say ... even an hour I have to get up and walk around." Ad.Tr. at 30. However, Totz's physical therapist, Greg Campbell, reported that Totz should be limited to one hour of sitting per work-day.[9] Dr. W. Leland Lindquist, Totz's attending physician, reported that Totz could sit for only four hours of an eight-hour day. Dr. Leonard Goldman, a consultive neurologist who examined Totz for purposes of his disability claim, reported that Totz could sit for "several hours" of an eight-hour work day. Only Dr. Alan Suddard, who never actually examined Totz, reported that Totz could sit for six hours of an eight-hour work day. Despite the existence of clearly conflicting medical opinions, the ALJ did not ask the vocational expert if any jobs would be available for a claimant who was *unable* to sit for six hours per eight-hour work day. Nor did the ALJ give any reason for crediting Dr. Suddard's findings over those of Dr. Lindquist, Dr. Goldman and Mr. Campbell. In light of the fact that Dr. Suddard was the only one of the group who did not actually examine Totz, the ALJ's reliance on Dr. Suddard's testimony seems especially misplaced. *See Utley v. Sullivan*, 943 F.2d 19, 21 (8th Cir.1991) (an ALJ is required to give substantial weight to the treating physician's opinion in the evaluation process); *see also Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir.1988). Thus,

---

8. We are also unpersuaded by Totz's argument that the ALJ failed to develop the record by not ordering a "job training evaluation" after the vocational expert testified that such an evaluation would be helpful. There is no specific regulation mandating a job training evaluation.

9. At the time of the hearing, Totz was attending weekly physical therapy sessions with Campbell. Aside from his limitation on sitting, Campbell also recommended that Totz stand for no more than one hour per work day, walk no more than one hour per work day, and lift a maximum of ten pounds.

we remand to the district court to return this case to the Secretary for rehearing with directions to revise its hypothetical in conformity with the testimony of Totz's treating physician, Dr. Lindquist.[10]

## CONCLUSION

The judgment of the district court is reversed, and the case is remanded to that court with instructions that it be returned to the Secretary for a rehearing consistent with this opinion.

10. Totz also contends that the hypothetical was inaccurate in that it did not prohibit the claimant from engaging in repetitive activity. We find the ALJ's decision not to include this limitation to be supported by substantial evidence on the record as a whole. While Mr. Campbell reported that repetitive activity could cause Totz to experience back pain, he also reported that Totz could use his hands for repetitive action such as grasping, pushing and pulling, and fine manipulation. Dr. Lindquist reported unequivocally that Totz could use both his hands and feet for repetitive actions.